OPINION OF THE COURT
Ruth E. Smith, J.
*752 Defendant is charged, under four separate dockets, with the crimes of aggravated harassment (Penal Law § 240.30 [1]), stalking (Penal Law § 120.50 [3]; 120.45 [1]) and two counts of criminal contempt (Penal Law § 215.50 [3]) against the same complainant. The People move for an order to consolidate the four dockets pursuant to Criminal Procedure Law §§ 100.45[1] and 200.20.
In support of their position, the People argue that the charges are similar in nature and establish an ongoing pattern of behavior against the same complaining witness, which would require duplicative evidence at trial.[2]
Defendant counters that because the charges are based on different criminal transactions occurring on different dates and the contempt charges are unrelated to the harassment and stalking charges, consolidation would be prejudicial. Thus, consolidation would allow the People to argue propensity to commit such crimes and lead the jury to assume that guilt of one charge should result in a verdict of guilt of another.
For the reasons stated below, the motion to consolidate is granted.
Facts
Docket One: 2003CN008940
Defendant is charged with stalking in the fourth degree (Penal Law § 120.45 [1]) and stalking in the third degree (Penal Law § 120.50 [3]) arising from a series of incidents occurring from October 7, 2003 through October 18, 2003. The complainant, Nancy Lara, alleges that defendant contacted her to ask her out on a date on two separate occasions after being told to stop. Defendant allegedly then appeared at various times and locations where the complainant was present.
At one of these encounters, defendant stared at the complainant while grabbing his crotch. On October 7, 2003, outside of the Kmart on 34th Street, defendant cleared his throat to get the complainant’s attention and then stared at her. On October 11, 2003, defendant came out of a bar, grabbed the complainant and initiated conversation. On October 17, 2003, defendant allegedly appeared at 10th Avenue and 22nd Street and stared at the complainant as she picked her daughter up from school. Ac *753 cording to the People, on this same date, there was an eyewitness, Lisandro Aldasoro, who allegedly saw the defendant leave a bar and walk toward Lara’s residence, but when defendant noticed the witness watching him, he turned and went back into the bar. The next day, defendant allegedly made eye contact with the complainant while on 23rd Street.
Docket Two: 2003CN009451
Defendant is charged with aggravated harassment in the second degree (Penal Law § 240.30 [1]) for making a series of telephone calls to Lara every day beginning July 1, 2003 through October 21, 2003. Defendant allegedly stated “I like you a lot. I want you to give me a chance to get to know you. If you need money, let me know. Whatever money you need, I’ll give you. I want to take you to dinner.” Defendant allegedly wrote a statement to the police indicating that the complainant had been verbally harassing him and hitting his door with a broom because he stopped paying rent.
Docket Three: 2004NY002485
Defendant is alleged to have committed the crime of criminal contempt in the second degree (Penal Law § 215.50 [3]) on January 6, 2004, by violating a full order of protection when he approached Lara and told her that he had lost 20 pounds. After his arrest, defendant purportedly made a statement to the police alleging that the complainant was harassing him because he refused to pay rent, that he had four complaints against her, that she sent “goons” to beat him up, and that she stated she would frame him “like a painting on the wall.” Defendant expressly denied the allegation in this complaint.
Docket Four: 2004CN003223
Defendant again stands accused of criminal contempt in the second degree (Penal Law § 215.50 [3]) arising from another alleged encounter with Lara. Specifically, on the afternoon of April 5, 2004, on 10th Avenue between West 21st and West 22nd Streets, defendant supposedly violated a full order of protection, issued under docket No. 2004NY002485, by approaching the complainant on the street, where he stared at her and smiled.
Discussion
Criminal Procedure Law § 200.20 (2) reads, in pertinent part, that two offenses can be joined when
“(a) They are based upon the same act or upon the same criminal transaction, as that term is defined *754 in [CPL 40.10 (2)];[3] or
“(b) Even though based upon different criminal transactions, such offenses, or the criminal transactions underlying them, are of such nature that either proof of the first offense would be material and admissible as evidence in chief upon a trial of the [other] . . .; or
“(c) Even though based on different criminal transactions, and even though not joinable pursuant to paragraph (b), such offenses are defined by the same or similar statutory provisions and consequently are the same or similar in law.”
The court has the discretion to consolidate separate dockets for trial, based upon the circumstances of the individual case (People v Lane, 56 NY2d 1 [1982]). The People must show that the charges may be legally joined and that it would be an appropriate exercise of the court’s discretion. Once the People establish such basis, defendant must make a showing of prejudice (id. at 8). When considering consolidation, the court should “weigh the public interest in avoiding duplicative, lengthy and expensive trials against the defendant’s interest in being protected from unfair disadvantage” (id.).
The court may consolidate separate and distinct criminal transactions when one case is admissible as evidence-in-chief in the other case (CPL 200.20 [2] [b]; People v Bongarzone, 69 NY2d 892, 895 [1987]). Such evidence includes issues admissible under Molineux [4] (People v Bynum, 275 AD2d 251 [1st Dept 2000], lv denied 95 NY2d 961 [2000] [admissible to show identity]; People v Washpun, 134 AD2d 858 [4th Dept 1987], lv denied 70 NY2d 1012 [1988] [admissible to show the same common scheme or plan]). The court may also consolidate separate criminal transactions when there is an overlap of evidence (People v Scott, 276 AD2d 380 [1st Dept 2000], lv denied 96 NY2d 738 [2001]; People v Alston, 264 AD2d 685 [1st Dept 1999], lv denied 94 NY2d 876 [2000]). Overlapping evidence includes testimony that will come from the same witness as to *755 each separate criminal transaction (People v Paraschiv, 169 AD2d 739 [2d Dept 1991], lv denied 77 NY2d 909 [1991] [three separate indictments properly consolidated for trial where defendant’s wife testified regarding each of the indictments, one of which involved her son as the victim, while the remaining concerned her as the victim]; People v Grate, 122 AD2d 853 [2d Dept 1986], lv denied 68 NY2d 1000 [1986] [the same witness testified in three out of four indictments consolidated for trial]).
The defendant faces prosecution for the following crimes:
A person is guilty of stalking in the fourth degree when he
“intentionally, and for no legitimate purpose, engages in a course of conduct directed at a specific person, and knows or reasonably should know that such conduct:
“1. is likely to cause reasonable fear of material harm to the physical health, safety or property of such person, a member of such person’s immediate family or a third party with whom such person is acquainted” (Penal Law § 120.45 [1]).
A person is guilty of stalking in the third degree when he,
“[w]ith intent to harass, annoy or alarm a specific person, intentionally engages in a course of conduct directed at such person which is likely to cause such person to reasonably fear physical injury or serious physical injury, the commission of a sex offense against, or the kidnaping, unlawful imprisonment or death of such person or a member of such person’s immediate family” (Penal Law § 120.50 [3]).
A person is guilty of aggravated harassment in the second degree when,
“with intent to harass, annoy, threaten or alarm another person, he or she:
“1. Either (a) communicates with a person, anonymously or otherwise, by telephone . . . in a manner likely to cause annoyance or alarm; or
“(b) causes a communication to be initiated by mechanical or electronic means or otherwise with a person, anonymously or otherwise, by telephone, ... in a manner likely to cause annoyance or alarm” (Penal Law § 240.30 [1]).
A person is guilty of criminal contempt in the second degree when he engages in “[i]ntentional disobedience or resistance to *756 the lawful process or other mandate of a court” (Penal Law § 215.50 [3]).
The stalking and harassment charges, while arising from separate criminal transactions, can be consolidated, for both charges raise the same question of law as to whether the defendant’s alleged course of conduct was legitimate communication or an intentionally intolerable imposition by one person upon another (compare People v Mangano, 100 NY2d 569 [2003] [aggravated harassment in the second degree, Penal Law § 240.30 (1)], with People v Shack, 86 NY2d 529, 538 [1995] [aggravated harassment in the second degree, Penal Law § 240.30 (2)]; see generally People v Stuart, 100 NY2d 412, 428 [2003] [stalking in the fourth degree, Penal Law § 120.45 (1)]). Like the aggravated harassment statute, the stalking statutes proscribe an illegitimate course of conduct that amounts to a private trespass against a person. Therefore, these two charges can be joined under the law (CPL 200.20 [2] [c]).
The four separately docketed cases may conceivably evidence a common scheme or plan. In each criminal transaction, the defendant is accused of unlawfully communicating with the complainant after being told to stop. In the aggravated harassment and stalking cases, the defendant was allegedly instructed by the complainant to cease his illegitimate communication. In the two contempt cases, the defendant was ordered by the court to cease all communication with the complainant. In each of the four cases, the defendant allegedly continued the unwanted and illegal communication, evidencing a common scheme or plan to establish a personal relationship with the complainant (CPL 200.20 [2] [b]; People v Washpun, 134 AD2d 858 [1987]).
The four instant cases are properly joined as each is admissible in the case-in-chief of the other (CPL 200.20 [2] [b]; Bongarzone at 895). For instance, defendant’s alleged calls to the complainant over a period of four months despite being told to stop (aggravated harassment) are admissible in the case-in-chief of the stalking case to establish his intent and absence of mistake. The facts of the stalking case, where defendant purportedly spoke to the complainant face-to-face, are admissible in the aggravated harassment case to establish identity and intent (Bynum at 251). The facts of the stalking case and the aggravated harassment case are both admissible in the contempt cases to show an intentional disobedience of the court order, as well as absence of mistake.
The testimonial evidence of Lara will overlap. Were these cases to be tried separately, she would be required to come to *757 court on four separate occasions to give essentially the same testimony. The complainant would be called upon to detail the business relationship with the defendant as well as the alleged repeated criminal contact (Bynum at 251; Washpun at 858). This overlapping testimony is a legitimate basis for consolidation (Paraschiv at 739; Grate at 853). Thus, the People have met their burden for consolidation. Defendant’s argument to the contrary is not persuasive.
For instance, defendant has not provided any information regarding testimony he may give on one case and a basis for not testifying on another (Lane, 56 NY2d at 8; People v Simpkins, 110 AD2d 790, 792 [2d Dept 1985], lv denied 66 NY2d 618 [1985]). There is no material variance in the quantity of the evidence to be adduced to prove the three separate cases (People v Cannon, 306 AD2d 130 [1st Dept 2003], lv denied 1 NY3d 539 [2003]). Further, defendant’s argument that the People will argue propensity and confuse the jury is premature and speculative (People v Brennin, 184 AD2d 715 [2d Dept 1992], lv denied 80 NY2d 901 [1992]).
Likewise, defendant’s reliance on People v Stanley (81 AD2d 842 [2d Dept 1981]) and People v Jackson (77 AD2d 630 [2d Dept 1980]) is misplaced. In this case, the nature of the charges is neither so similar as to cause a cumulative effect of the evidence, nor so egregiously prejudicial as to outweigh the convenience to the People. The four cases are sufficiently distinct so that they can be presented separately by the People and easily separated in the minds of the jurors (People v Harris, 304 AD2d 355 [1st Dept 2003], lv denied 100 NY2d 582 [2003]; People v Santiago, 2 AD3d 263 [1st Dept 2003]). Thus, defendant has failed to show any undue prejudice by a joint trial (People v Torra, 309 AD2d 1074 [3d Dept 2003], lv denied 1 NY3d 581 [2003]).
In weighing the public interest against unfair disadvantage to the defendant, the court finds that the facts weigh in favor of consolidation. The substantive issue at the trial will be the weight of the testimonial evidence of Lara. The fact that there is one other witness to a single incident in one docket does not militate against consolidation. As such, the People’s motion to consolidate is granted.

. This section makes applicable to informations, prosecutor’s informations and misdemeanor complaints the provisions of CPL 200.20 and 200.40.

. Presumptively, this argument is directed toward proving the defendant’s identity, common scheme or plan, intent or absence of mistake.

. “Criminal transaction” means “conduct which establishes at least one offense, and which is comprised of two or more or a group of acts either (a) so closely related and connected in point of time and circumstance of commission as to constitute a single criminal incident, or (b) so closely related in criminal purpose or objective as to constitute elements or integral parts of a single criminal venture” (CPL 40.10 [2]).

. People v Molineux, 168 NY 264 (1901).